| **Return** | | |
|---|---|---|
| Case No.:<br>20-1067M (NJ) | Date and time warrant executed:<br>10-26-20    5:44Pm | Copy of warrant and inventory left with:<br>GOOGLE |

Inventory made in the presence of :
TFO   JOE   BIALKOWSKI

Inventory of the property taken and name(s) of any person(s) seized:

- GOOGLE   RECORDS   FOR   FIVE (5)   ACCOUNTS

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  11-15-20

_____
_Executing officer's signature_

SCOTT   SIMONS, TFO
_Printed name and title_

❒ Original          ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information associated with the following email addresses:<br>patriotprocessing15@gmail.com,  Rlegge69@gmail.com,<br>Jenniferlegge86@gmail.com,  Jklenterprises01@gmail.com,<br>Handsomerob0315@gmail.com; as more fully described in Attachment A | )<br>)<br>)  Case No.  20-1067M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   November 9, 2020              *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.     ❒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____ .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*     ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:     October 26, 2020 @2:34 p.m.          *Nancy Joseph*
                                                                    *Judge's signature*

City and state:   Milwaukee. WI.                          Honorable Nancy Joseph
                                                            *Printed name and title*

## ATTACHMENT A
## Property to Be Searched

This warrant applies to information associated with the following email addresses and accounts and for the following periods, that are stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California:

1. **patriotprocessing15@gmail.com** (from October 1, 2017 to present)

2. **Rlegge69@gmail.com** (from October 1, 2017 to present)

3. **Jenniferlegge86@gmail.com** (from October 1, 2017 to present)

4. **Jklenterprises01@gmail.com** (from October 1, 2017 to present)

5. **Handsomerob0315@gmail.com** (from October 1, 2017 to present)

## ATTACHMENT B
### Particular Things to be Disclosed and Seized

**I.     Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each of the accounts or identifiers listed in Attachment A:

a.     All customer information (e.g. name, age, email address, physical address, payment information, telephone numbers) associated with the account;

b.     All records and information regarding the creation of the account and access to the account, including records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, and log-in IP addresses associated with session times and dates.

c.     The types of services utilized;

d.     The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

e.     The contents of all Google Hangout, or other Google chats, associated with the account, including stored or preserved copies of chat conversations sent to and from the account, the source and destination user associated with each conversation, and the date and time at which each message was sent;

32

f.        All records, files, and other information stored/saved in the accounts, including information, files, and data saved to Google Drive;

g.        A complete file activity log for any associated Google Drive account;

h.        All records and information and analytics collected by the Provider through the use of cookies or similar technology including the type of browser and device used by the account holder to access the account, the web page visited before coming to Google sites, and other identifiers associated with the devices used by the account holder;

i.        All records and information that identifies a user's actual location;

j.        All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken;

k.        All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of the warrant.

## II.        Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities related to violations of Title 21, United States Code, Sections 846 and 841(a)(1) (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet), since October of 2017, including but not limited to, information pertaining to the following matters:

a.        The sale and distribution of controlled substances;

b. The exchange or laundering of funds related to the sale and distribution of controlled substances;

c. Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

d. Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

e. The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s)

f. Other accounts used by the persons using the account;

g. The devices used to access the account;

h. The identity of the person(s) who communicated with the account about matters relating to the sale and distribution of controlled substances, including records that help reveal their whereabouts;

i. The identity of persons sharing Google Drive account URLs associated with the account and related to the sale and distribution of controlled substances;

j. The identity of persons saving, storing, editing, and accessing files and records on Google Drive accounts associated with the account and related to the sale and distribution of controlled substances;

k. Financial information, credit card numbers, social security numbers, and other personal identifiable information stored on/in Google Drive account; and

l. Communications and files that contain IP addresses and username and passwords to those IP addresses.

34

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the following email addresses:<br>patriotprocessing15@gmail.com, Rlegge69@gmail.com,<br>Jenniferlegge86@gmail.com, Jklenterprises01@gmail.com,<br>Handsomerob0315@gmail.com; as more fully described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 20-1067M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See attachment A

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, USC,Sections 846<br>and 841(a)(1),Title 21, USC,<br>Sections 841(h) ,843(c)(2)(A) | See attached affidavit |

The application is based on these facts:

See attached affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SCOTT SIMONS (Affiliate)   Digitally signed by SCOTT SIMONS (Affiliate)<br>  Date: 2020.10.26 12:25:03 -05'00'

*Applicant's signature*

Scott Simon, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: October 26, 2020

*Judge's signature*

City and state: Milwaukee. WI.

Honorable Nancy Joseph

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Scott Simons, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by Google, Inc. ("Google") an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California. The accounts and information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Task Force Officer assigned to the Milwaukee District Office of the Drug Enforcement Administration (DEA) as a member of the Tactical Diversion Squad (TDS). I specialize in pharmaceutical investigations. I have worked full-time as a federal task force officer for the past 7 years and a full-time law enforcement officer with the Greenfield Police Department for the past 18 years. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      During my tenure as a law enforcement officer, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of drug trafficking, money

laundering, and computer crimes. I have worked with informants in the investigations of drug trafficking in the Milwaukee area as well as other jurisdictions within the State of Wisconsin and throughout the United States. I have participated in the application for and execution of numerous search warrants. I have participated directly in numerous narcotics investigations and arrests in which controlled substances and drug paraphernalia were seized. I am familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale in various areas.

       4.      The statements in this affidavit are based on my personal knowledge, information I have received from other law enforcement personnel, publicly available information, and from persons with knowledge of relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation.

       5.      Based on the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that the information associated with the accounts identified in Attachment A, will contain fruits, evidence, and instrumentalities related to violations of Title 21, United States Code, Sections 846 and 841(a)(1) (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet) (the "Subject Offenses"), as further described in Attachment B.

## BACKGROUND OF THE INVESTIGATION

       6.      In February of 2015, the Milwaukee District Office of the DEA initiated an investigation into the internet pharmacy GOLDPHARMA24 located at www.goldpharma-24.com, which advertises for sale controlled and non-controlled pharmaceuticals, including schedule II

2

controlled substances, without requiring a prescription for such substances. During the course of the investigation of GOLDPHARMA24, case agents identified a primary overseas drug shipper, LUTZ DOMBDERA, and LUTZ DOMBDERA's U.S. based payment processor, ROBERT LEGGE. ROBERT LEGGE's Google account was identified which was used to facilitate the commission of the Subject Offenses. As described below, probable cause exists to believe the Google accounts associated with the email addresses identified in Attachment A were used to facilitate the commission of the Subject Offenses.

## STATUTORY BACKGROUND

7.      The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 amended the Controlled Substances Act to address online pharmacies, codified at Title 21, United States Code (U.S.C.), § 829. No controlled substance that is a prescription drug as determined by the Federal Food, Drug and Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by Title 21, Code of Federal Regulations (C.F.R.) § 1306.09(a). *See* Title 21, U.S.C. § 829(e), § 841(a)(1) (Distribution of Controlled Substances); 21 U.S.C. § 841(h), § 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet). According to Title 21 U.S.C. § 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least 1 in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at

3

least 1 in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

8.      The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies. According to C.F.R. § 1301.11(b):

> As provided in sections 303(f) and 401(h) of the Act (21 U.S.C. 823(f) and 841(h)), it is unlawful for any person who falls within the definition of "online pharmacy" (as set forth in section 102(52) of the Act (21 U.S.C. 802(52)) and § 1300.04(h) of this chapter) to deliver, distribute, or dispense a controlled substance by means of the Internet if such person is not validly registered with a modification of such registration authorizing such activity (unless such person is exempt from such modified registration requirement under the Act or this chapter).

9.      According to DEA records, neither Goldpharma24, PILLSBROTHERS, nor TRAMADOLSHOP are a registered online pharmacy.

## PROBABLE CAUSE

10.      In February 2015, the Milwaukee District Office of the DEA initiated an investigation into the internet pharmacy GOLDPHARMA24 located at www.goldpharma-24.com, which advertised controlled and non-controlled pharmaceuticals for sale without requiring a prescription for such substances.

11.      Beginning in June 2015, case agents conducted multiple undercover purchases from the GOLDPHARMA24 internet pharmacy. Case agents purchased and received drugs including codeine (a schedule II controlled substance), tapentadol (a schedule II controlled substance), alprazolam (a schedule IV controlled substance), carisoprodol (a schedule IV

4

controlled substance), diazepam (a schedule IV controlled substance), and tramadol (a schedule IV controlled substance). At the time, the majority of these controlled substances were sent from Romania to the United States through the U.S. Postal Service. The undercover agent never received an examination and was never questioned about medical history, current medications, or symptoms that would be required to be prescribed this medication. These medications were sent to the DEA laboratory in Chicago and tested positive for the presence of the indicated drugs.

12.    On February 10, 2019, case agents conducted an undercover purchase of 500 tablets of Tramadol 100mg (a schedule IV controlled substance). Case agents received this package, which contained 500 tablets of Tramadol 100mg that was shipped from Delta Shipping utilizing PO Box 993 in Singapore. A review of this package revealed 500 tablets of suspected Tramadol 100mg contained within blister packs. Also present were manufacturer's boxes identifying the manufacturer as HAB Pharmaceuticals & Research Limited, which is located in India. Case agents are aware that this Delta Shipping PO Box has been utilized numerous times in the past to ship controlled substances to the United States in other ongoing investigations and belongs to LUTZ DOMBDERA.

13.    On August 18, 2019, case agents communicated directly with LUTZ DOMBDERA, via email, at lutz@avantisg.com. Case agents inquired about pricing for pharmaceuticals and shipping. LUTZ DOMBDERA told case agents that he only handled logistics, but he introduced case agents, via email, to his "client", Genex Healthcare, Inc. Case agents began discussing pricing of drugs and shipping. The Genex Healthcare representative emailed case agents documents including drugs available for sale and the pricing from Singapore. It was explained that they offer the drugs and shipping, or if the client has their own drug supply, the client can ship their own drug supply to the warehouse in Singapore and Genex Healthcare

5

employees will ship them. Case agents reviewed the metadata contained within some of the documents provided by Genex Healthcare, and the author of said documents was "Lutz". Case agents believe LUTZ DOMBDERA is the owner of Genex Healthcare.

14.     Case agents received information from Singaporean authorities related to the business Avanti Fulfillment Pte. Ltd., which has been listed on thousands of drug parcels shipped to the U.S. Singapore records list LUTZ DOMBDERA as the director and shareholder with a business address in Singapore, home address in Germany, and email address of lutz@avantisg.com. This is the same email address case agents communicated with someone suspected to be LUTZ DOMBDERA, and were referred to Genex Healthcare for controlled substances to be shipped to the U.S.

15.     Case agents learned that German Customs agents were investigating German Nationals, LUTZ DOMBDERA and FREDERICK BUECKER for controlling this DTO. The German authorities are conducting multiple wire intercepts of telephones and computers being used by LUTZ DOMBDERA and FREDERICK BUCKER. Based on the German and U.S. investigations, it is known that LUTZ DOMBDERA communicates with multiple pharmaceutical suppliers throughout the world and the pharmaceuticals are shipped to a warehouse controlled by LUTZ DOMBDERA located in the free trade zone in Singapore. The warehouse holds approximately 5 million tablets of various pharmaceuticals at any given time. LUTZ DOMBDERA's warehouse ships bulk drug parcels to reshippers throughout the world and offers drop shipping services. The term "drop shipping" is when a shipper, such as LUTZ DOMBDERA, fulfills another company's customer order. This is commonly done to distance the company taking the orders from the handling of the drugs. LUTZ DOMBDERA also maintains his own online pharmacy websites, TRAMADOLSHOP.is and PILLSBROTHERS.is.

16.     On September 17, 2019, Customs and Border Protection (CBP), conducted a search on behalf of case agents for any parcels arriving in the U.S. from Avanti Fulfillment Pte. Ltd. CBP found that in just a one-week period, records showed approximately 1,100 parcels from the shipper Avanti Fulfillment Pte. Ltd., which included 47 parcels into Wisconsin. The parcels that were randomly inspected by CBP were found to contain various types of pharmaceuticals.

17.     On November 8, 2019, case agents conducted an undercover purchase from Genex Healthcare, via email. Case agents purchased 1,500 tablets of tramadol 225mg (a schedule IV controlled substance), 1,500 tablets of carisoprodol 500mg (a schedule IV controlled substance), and 500 tablets of etizolam 1mg (unapproved medication in the U.S.). In connection with the purchase, case agents were directed to conduct a bank transfer to a Genex Healthcare bank account in Singapore. Case agents received the shipments of the 1,500 tablets of tramadol 225mg, 1,500 tablets of carisoprodol 500mg, and 500 tablets of etizolam 1mg. The parcels containing these drugs were shipped from P.O. Box 1233 in Singapore with the shipper listed as Globalmail Solution. The medications were sent to the DEA laboratory in Chicago.

18.     On December 3, 2019, case agents received information from Singapore authorities related to P.O. Box 1233. Case agents were informed P.O. Box 1233 is rented by Avanti Fulfillment Pte. Ltd. under the name Globalmail Solution.

19.     On January 1, 2020, Singapore authorities informed case agents that in April 2019, a routine inspection was conducted at the Avanti Fulfillment Lte. Ptd. warehouse and it was found the warehouse was shipping prescription drugs to customers, without a prescription, contrary to Singapore law. No action was been taken in response to the violation of Singapore law. Case agents were also informed that LUTZ DOMBDERA is listed as the director of the following four businesses in Singapore:

7

- Suki Distribution Pte. Ltd. (per Singapore authorities, this company distributes products in the health care sector)

- Ella Distribution Pte. Ltd. (per Singapore authorities, this company distributes products in the health care sector)

- EEB Consultants Pte. Ltd. (per Singapore authorities, this company provides corporate finance advisory services)

- Avanti Fulfillment Pte. Ltd.

20.      On January 6, 2020, case agents conducted an undercover purchase from Genex Healthcare, via email.  Case agents purchased 5,000 tablets of tramadol 225mg (a schedule IV controlled substance) and 5,000 tablets of carisoprodol 500mg (a schedule IV controlled substance).  In connection with the purchase, case agents were directed to conduct a bank transfer to a Genex Healthcare bank account in Singapore.  Case agents received the shipments of the 5,000 tablets of tramadol 225mg and 5,000 tablets of carisoprodol 500mg.  The parcels containing these drugs were shipped from Globalmail Solution P.O. Box 1233 in Singapore and Delta Shipping P.O. Box 933 in Singapore.  The medications were sent to the DEA laboratory in Chicago, and the analysis results are pending.

21.      On January 30, 2020, case agents identified the following PayPal account, pursuant to a DEA Administrative Subpoena:

- Name: LUTZ DOMBDERA
- Business name: Avanti Fulfillment Pte. Ltd.
- Email: lutz@avantisg.com
- Balance: $4,571.96 USD

A review of the account transactions revealed multiple payments from Rebecca Buckley in

8

Minnesota. The Food and Drug Administration arrested Buckley in 2019 for her role in receiving drug parcels and receiving payments from customers.

22.     On April 2, 2020, case agents conducted an undercover purchase from Genex Healthcare, via email. Case agents purchased 10,000 tablets of carisoprodol 500mg (a schedule IV controlled substance). In connection with the purchase, case agents were directed to conduct a bank transfer to a Genex Healthcare bank account in Singapore. Case agents received the shipments of the 10,000 tablets of carisoprodol 500mg. The parcels containing these drugs were shipped from Globalmail Solution P.O. Box 1233 in Singapore. The medications were sent to the DEA laboratory in Chicago, and the analysis results are pending.

23.     In April 2020, case agents reviewed parcels being shipped by Globalmail Solution in Singapore to Wisconsin and dozens of suspected customers were identified. Case agents noted one recipient of interest due to there being fourteen (14) parcels from Globalmail Solution to a P.O. Box in Madison, Wisconsin addresses to a recipient, who will be referred to as "S.S." Case agents intercepted these fourteen (14) parcels from Globalmail Solution, in addition to an additional three (3) parcels to the same recipient but from a different shipper in Singapore.

24.     On May 1, 2020, case agents interviewed S.S. S.S. said he/she purchased approximately 2,000 tablets of Gabapentin (a non-controlled but prescription medication) from a website. S.S. then decided to purchase a few hundred more tablets later the same day. S.S. has been purchasing Gabapentin online for the past two years without a prescription and many of the parcels have shipped from Singapore. S.S. stated because he/she did not receive these tablets which case agents seized, S.S. requested the tablets be re-shipped. S.S. later received approximately another 2,000 tablets of Gabapentin as a replacement. S.S. turned these replacement tablets over to case agents and gave consent to case agents to open all seized parcels.

Case agents found tablets in blister packs implying the tablets were Gabapentin. It is believed S.S. was purchasing Gabapentin tablets from an online pharmacy that was supplied by LUTZ DOMBDERA.

25.     In July 2020, case agents received records from crypto currency exchange Paxos, pursuant to a DEA Administrative Subpoena. These records identified three accounts owned by LUTZ DOMBDERA and one account owned by the wife of LUTZ DOMBDERA. The three account belonging to LUTZ DOMBDERA and his businesses have received in excess of $10 million over the past few years. The accounts receive Bitcoins and within minutes, the funds are transferred out in the form of U.S. dollar to bank accounts in Singapore. The three accounts are as follows:

- Account name: LUTZ DOMBDERA - $5.2 million USD
- Account name: Suki Distribution Pte. Ltd. - $1 million USD
- Account name: Avanti Fulfillment Pte. Ltd - $4.7 million USD

26.     On July 28, 2020, case agents conducted an undercover purchase from the online pharmacy www.TRAMADOLSHOP.is, which has been identified by the German authorities, via judicially obtained phone intercepts, as one online pharmacy owned by LUTZ DOMBDERA. Case agents purchased 720 tablets of tramadol 225mg (a schedule IV controlled substance). In connection with the purchase, case agents selected Zelle as the payment option and were directed to transfer payment, via Zelle, to JENNIFER LEGGE with phone number (480)243-0144. On August 17, 2020, case agents received the shipments of the 720 tablets of tramadol 225mg. The parcel containing these drugs was shipped from Delta Shipping P.O. Box 993 in Singapore. The medications were sent to the DEA laboratory in Chicago.

10

27.    On August 3, 2020, case agents, in an undercover capacity, called (480) 243-0144 to speak about the controlled purchase of tramadol. The undercover agent received no answer so left a voicemail. A short time later, the undercover agent received a text message from this same phone number and the sender said their name was "Jennifer". Jennifer explained the payment process. The undercover agent said his purchase was from the tramadol website, and Jennifer replied by stating they process payments for multiple vendors, and as a result, they do not know what products are being sold. Jennifer made no inquiry about being told the payment was for a purchase from a tramadol website.

28.    Case agents later reviewed financial records for the Zelle account belonging to JENNIFER LEGGE and confirmed it was the correct account, based on the undercover agents' drug payment appearing as a deposit. The records revealed this account received 2,427 suspected drug payments between February 9, 2019 and August 4, 2020 for a total of $501,238.64 USD. These Zelle records show these funds are being transferred into other Bank of America accounts controlled by ROBERT LEGGE and JENNIFER LEGGE, and these other Bank of America accounts have Zelle accounts linked to the following email addresses:

- **Rlegge69@gmail.com**
- **Jenniferlegge86@gmail.com**
- **Patriotprocessing15@gmail.com**
- **Jklenterprises01@gmail.com**
- **Handsomerob0315@gmail.com**

29.    Case agents know that Zelle is an intermediary company used to transfer funds from one bank account to another bank account. A Zelle account must be linked to a phone, number or

in this case, linked to an email address. These email addresses are believed to have received email notifications related to drug payments being received into the bank accounts, via Zelle.

30. Case agents accessed files available to DEA and found that JENNIFER LEGGE and her husband, ROBERT LEGGE, reportedly own a payment processing business, Patriot Processing, LLC. In Phoenix, Arizona.

31. Case agents received records from Verizon Wireless related to JENNIFER LEGGE's phone number (480)243-0144, pursuant to a DEA Administrative Subpoena. These records identified the account holder as the following:

- Name: ROBERT LEGGE
- Contact: JENNIFER LEGGE
- Work Phone: (602)309-6748
- Address: 20402 N. 17th Ln., Phoenix, Arizona 85027

32. Case agents reviewed U.S. Postal Service records related to the parcel purchased by case agents containing 720 tablets of tramadol 225mg. The tracking of this parcel was checked multiple times, but one of interest was a Cox Communications IP address 2600:8800:e00:d7:cd7d:9b23:cd0:cda4, which was utilized to check the tracking of this drug parcel and the tracking of approximately 155 other suspected drug parcels shipped from overseas to various recipients across the U.S.

33. Case agents received records from Cox Communications related to IP address 2600:8800:e00:d7:cd7d:9b23:cd0:cda4, pursuant to a DEA Administrative Subpoena. These records revealed the account holder and location this IP address was assigned is as follows:

- Name: ROBERT LEGGE
- Address: 20402 N. 17th Ln., Phoenix, Arizona 85027-3526

12

- Home Phone: (602)309-6748

34. On August 1, 2020, case agents placed an order from the online pharmacy www.TRAMADOLSHOP.is, which has been identified by the German authorities, via judicially obtained phone intercepts, as one online pharmacy owned by LUTZ DOMBDERA. Case agents ordered 360 tablets of tramadol 225mg (a schedule IV controlled substance) to be shipped to the Eastern District of Wisconsin and selected to pay, via PayPal. Case agents were directed to send payment to a PayPal account linked to name Sathian Subramaniam and email address secret_kym@yahoo.com. Case agents canceled this purchase due to the sole purpose of the order was to identify the PayPal account being used to receive drug payments.

35. On August 12, 2020, case agents received records from PayPal related to any accounts linked to Sathian Subramaniam and email address secret_kym@yahoo.com, pursuant to a DEA Administrative Subpoena. PayPal records revealed one PayPal account linked to this account holder and email address. Another account holder on this PayPal account is Frederik Buecker (partner of LUTZ DOMBDERA). Since June 4, 2019, this account has received 2,017 deposits, which are all consistent with amounts paid by pharmaceutical customers, for a total of $365,543.71 USD. All of these funds were then transferred into three bank accounts located in Singapore. Case agents reviewed the list of persons making deposits into this PayPal account and found multiple suspected customers in Wisconsin. Two of these suspected customers are Michelle Sutton in Oak Creek, Wisconsin and Jason Jabs in Pleasant Prairie, Wisconsin.

36. On August 14, 2020, case agents interviewed M.S. in Oak Creek, Wisconsin. M.S. said she has purchased tramadol 50mg (a schedule IV controlled substance) from www.tramadolshop.is (online pharmacy owned by LUTZ DOMBDERA) approximately six to eight times over the past two years. Each purchase contained approximately 200 tablets and cost

about $100 USD. Payments were made, via PayPal, to the PayPal account linked to email address secret_kym@yahoo.com. Ms. Sutton did not have a prescription for the medication, and the parcels were shipped from India and Singapore.

37.     On August 14, 2020, case agents interviewed J.J. in Pleasant Prairie, Wisconsin. J.J. said he has purchased Viagra and Cialis (non-controlled but prescription drug requiring prescription) from www.tramadolshop.is (online pharmacy owned by LUTZ DOMBDERA) approximately six to eight times over the past one to one and a half years. Each purchase contained approximately 20 to 30 tablets and cost about $100 to $200 USD. Payments were always paid, via PayPal, and case agents found his deposits in the records for the PayPal account linked to email address secret_kym@yahoo.com. J.J. did not have a prescription for the medication, and the parcels were shipped from Philippines and Singapore. J.J. said on one occasion U.S. Customs seized a drug parcel, and he received a letter advising the substance was illegal.

38.     On September 10, 2020, case agents identified another Cox Communications IP address which was used to check the tracking on August 1, 2020, of approximately 221 suspected drug parcels being shipped from Singapore, Switzerland, and Germany, which are all countries known for LUTZ DOMBDERA to ship drug parcels from. The IP address was used to check the tracking of a parcel that the known Cox Communications IP address belonging to ROBERT LEGGE was also used to check. As a result, it is believed that upon receiving Cox Communications records for this other IP address, it will reveal this this IP address was also assigned to ROBERT LEGGE at 20402 N. 17th Ln., Phoenix, Arizona 85027. Case agents identified the recipients of three parcels that had the tracking checked by this new IP address and interviewed them as follows:

- On September 16, 2020, case agents interviewed J.F. in Riverview, Florida regarding a parcel shipped to J.F. from Tranship Solution P.O. Box 1233, Singapore (address controlled by LUTZ DOMBDERA previously under the name, Globalmail Solution). J.F. said he did not want to answer questions without consulting an attorney, but he did say he might have purchased pharmaceuticals. Case agents reviewed records and found additional, similar parcels shipped to J.F.. Case agents reviewed Zelle records in the name of JENNIFER LEGGE and found J.F. transferred funds, via Zelle, to this account on July 23, 2020.

- On September 22, 2020, case agents interviewed L.D. in Doral, Florida regarding one parcel shipped from Tranship Solution P.O. Box 1233, Singapore and one parcel shipped from Delta Shipping P.O. Box 933 in Singapore. L.D. said she began purchasing pills from overseas approximately six years to include as recent as a parcel from Delta Shipping on September 7, 2020. L.D. did not feel comfortable answering any further questions. Case agents reviewed Zelle records in the name of JENNIFER LEGGE and found L.D. transferred funds, via Zelle, to this account ten times from March 2019 through August 2020.

- On September 22, 2020, case agents interviewed A.A. in Sunny Isles Beach, Florida regarding a parcel shipped from Delta Shipping P.O. Box 993, Singapore to A.A. A.A. stated she purchased approximately 30 tablets of tramadol (a schedule IV controlled substance) about two times from www.tramadolshop.is (online pharmacy owned by LUTZ DOMBDERA) and paid approximately $60 each time, via Zelle. A.A. was instructed to make her Zelle payments to JENNIFER LEGGE with phone number (480)243-0144 (known to case agents to be registered to ROBERT LEGGE at 20402 N. 17th Ln., Phoenix,

Arizona 85027).  The most recent drug parcel was delivered to A.A. on August 6, 2020.
Case agents reviewed Zelle records in the name of JENNIFER LEGGE and found A.A.
transferred funds, via Zelle, to this account four times from January 2020 through July
2020.

39.     On September 23, 2020, case agents interviewed a DEA confidential source,
hereinafter, referred to as CS.  The CS told case agents that the CS was introduced to ROBERT
LEGGE in October 2017 because ROBERT LEGGE was running a business and needed assistance
from someone with the CS's skills.  The CS began communicating with ROBERT LEGGE, via
phone, WhatsApp, and email.  The CS also met ROBERT LEGGE in person in November 2017
in Las Vegas and again in December 2017 in Phoenix.  ROBERT LEGGE told the CS that for
years, he has received bulk orders shipped to his own residence in Phoenix containing
pharmaceuticals to include, but not limited to, tapentadol (a schedule II controlled substance),
tramadol (a schedule IV controlled substance), Soma (a schedule IV controlled substance), and
erectile dysfunction medication (non-controlled but requiring a prescription).  ROBERT LEGGE
sells these drugs on the street and has some clients he sells 2,000 tablets to at a time.  ROBERT
LEGGE said he buys them for approximately $1.00 USD per tablet but sells them between $5.00
to $10.00 USD per tablet.

40.     The CS was also told that ROBERT LEGGE had been processing payments for
overseas pharmaceutical suppliers who were selling their drugs to primarily U.S. customers.
ROBERT LEGGE said he processed more about $1.3 or $1.4 million USD in drug sales using a
PayPal account and now the PayPal account was shutdown.  ROBERT LEGGE recruited the CS
to setup merchant account to process credit card payments for drug purchases and to work as a
customer representative.

41.     The CS stated there were a few Indian drug suppliers and they sold 90% of their drugs to U.S. customers using call centers based in India and the U.K. The overseas suppliers handled the sale of the drug orders and the shipping. The suppliers emailed the order information, which contained the customer name, address, contact information, tracking number, and payment amount owed. The CS and ROBERT LEGGE would check the tracking of all parcels because they were "the face" of the business. Once the order was placed, the customers would communicate with the CS and ROBERT LEGGE. After the orders were emailed to ROBERT LEGGE from the suppliers, ROBERT LEGGE would email the order information to the CS from ROBERT LEGGE's email address **patriotprocessing15@gmail.com.** The CS stated he and ROBERT LEGGE were not setup to ship drug parcels, but U.S. Customs seized about 3% of the parcels. To avoid customers becoming unsatisfied, the CS had a bulk order of erectile dysfunction medications shipped to the CS's residence. When a customer's parcel was seized by customs, the CS would reship the drugs to the customer, via USPS. The CS would only ship erectile dysfunction drugs and not controlled substances for legal and moral reasons. The CS said occasionally a customer wanted to return their order so one time a customer did send their tramadol order to the CS. The CS was arrested in approximately July 2019 by federal law enforcement, and the CS stated he was in possession of a couple thousand tablets of erectile dysfunction medication and a small quantity of tramadol.

42.     The CS handled communication with one Indian supplier, but ROBERT LEGGE was very protective of the other supplier(s) so ROBERT LEGGE conducted all communication with that supplier(s). At the time the CS was working for ROBERT LEGGE, they only processed credit card payments, which was accomplished through PayPal accounts belonging to ROBERT LEGGE, and merchant accounts the CS created in the names of ROBERT LEGGE and his wife

JENNIFER LEGGE. At one point ROBERT LEGGE emailed the CS personal identifying information for ROBERT LEGGE and JENNIFER LEGGE to assist with the opening of merchant accounts. The CS had an image of the Arizona driver's license of LEGGE, and the CS stated that the person depicted on this driver's license is who the CS met on two occasions and knows as ROBERT LEGGE. The credit card payments by customers were deposited into ROBERT LEGGE's business account with JP Morgan Chase. ROBERT LEGGE's business name he uses is Patriot Processing and the CS said ROBERT LEGGE never processes payments for anything except drug purchases.

43.     The CS was paid approximately $2,500 USD per month, for the approximately twenty-two months the CS worked for ROBERT LEGGE. ROBERT LEGGE's commission from all the processed payments is between 30% and 35%. After ROBERT LEGGE removed his commission, ROBERT LEGGE transferred the remainder overseas to the drug suppliers.

44.     The CS said although they did not normally receive the type and quantity of drugs along with the orders from the suppliers, there was a short period of time this information was included. The CS provided numerous files to case agents that included a list of orders for portions of the time the CS worked for ROBERT LEGGE. Case agents observed multiple customers from the Eastern District of Wisconsin.

45.     Case agents believe the CS is a reliable witness as the CS has provided a statement against the CS's own penal interest and information provided by the CS have been independently corroborated by case agents. The CS's criminal history consists of one federal arrest for a felony. The CS has no prior felony convictions. The CS has provided information in other investigations, and that information was found to be accurate and reliable. The CS is cooperating with law enforcement for potential consideration for his federal felony fraud arrest, which remains pending.

46.     Case agents reviewed records for a PayPal account listing to ROBERT LEGGE and Patriot Processing, LLC with email address **rlegge69@gmail.com**.     The PayPal account processed suspected drug payments from January 3, 2017 through June 17, 2017 in the amount of $2,439,703.62.   Nearly all the funds were transferred to bank accounts with Bank of America and JP Morgan Chase, which is where case agents know ROBERT LEGGE and JENNIFER LEGGE have held bank accounts.  Case agents reviewed the list of customers and found multiple customers in the Eastern District of Wisconsin.  Case know that email account **rlegge69@gmail.com** would have likely received email notifications regarding activity of drug payments into this PayPal account linked to email address **rlegge69@gmail.com.**

47.     Case agents reviewed records for a PayPal account listing to LUTZ DOMBDERA and Avanti Fulfillment Pte. Ltd.   The PayPal account received funds during 31 transactions from ROBERT LEGGE and JENNIFER LEGGE between February 7, 2018 and December 6, 2019, in the amount of $7,614.71 USD.  ROBERT LEGGE and JENNIFER LEGGE used the following email addresses as part of their transactions:

- **Jklenterprises01@gmail.com**

- **Rlegge69@gmail.com**

- **Patriotprocessing15@gmail.com**

48.     Case agents reviewed JP Morgan Chase account ending in #7395 from June 1, 2019 through September 30, 2019.  This account lists to ROBERT LEGGE and Patriot Processing, LLC.  During this four month time period, case agents noted the following:

- 6 outgoing transactions to Avanti Fulfillment PayPal account for a total of $1,123.04 USD

19

- 7 outgoing transactions to a DBS Bank Ltd. account in Singapore for a total of $103,353.84 (Case agents are aware LUTZ DOMBDERA holds a bank account at DBS Bank Ltd.)

- 2 outgoing transactions to a United Overseas Bank Ltd. account in Singapore for a total of $37,041.96 (Case agents are aware LUTZ DOMBDERA holds a bank account at DBS Bank Ltd.)

49.    Case agents reviewed Bank of America account ending in #2481 from August 25, 2020 through September 23, 2020.  This account lists to ROBERT LEGGE and JENNIFER LEGGE.  During this one month time period case agents noted the following:

- 60 incoming Zelle transactions in the amount of $12,295.94

- 1 incoming Zelle transaction was from Alexandra Alexeyeva as a confirmed drug payment

50.    Case agents reviewed USPS parcel records for the residence of ROBERT LEGGE and JENNIFER LEGGE at 20402 N. 17th Ln., Phoenix, Arizona 85027 for the past two years, and based on international tracking numbers from Singapore, it is believed at least 39 drug parcels have been delivered to this residence to include two Singapore parcels on September 22, 2020. Nine of the more recent Singapore parcels included images of the shipping labels, and all parcels having tracking records still available, had the tracking checked by IP addresses issued by Cox Communications.   The following information was captured from the shipping labels of the ten most recent parcels:

- LT110492418SG

  - Shipper: Tranship Solution - P.O. Box 1233, Singapore

  - Recipient: Patriot Processing - 20402 N. 17th Ln., Phoenix, Arizona 85027

- o Declared Contents: Supplement

- LT110492347SG

  - o Shipper: Tranship Solution - P.O. Box 1233, Singapore

  - o Recipient: JKL Enterprises - 20402 N. 17th Ln., Phoenix, Arizona 85027

  - o Declared Contents: Supplement

- LT110347486SG

  - o Shipper: Tranship Solution - P.O. Box 1233, Singapore

  - o Recipient: Patriot Processing - 20402 N. 17th Ln., Phoenix, Arizona 85027

  - o Declared Contents: Supplement

- LT110347194SG

  - o Shipper: Tranship Solution - P.O. Box 1233, Singapore

  - o Recipient: JKL Enterprises - 20402 N. 17th Ln., Phoenix, Arizona 85027

  - o Declared Contents: Supplement

- LT109530842SG

  - o Shipper: Tranship Solution - P.O. Box 1233, Singapore

  - o Recipient: JKL Enterprises - 20402 N. 17th Ln., Phoenix, Arizona 85027

  - o Declared Contents: Supplement

- LT109530785SG

  - o Shipper: Tranship Solution - P.O. Box 1233, Singapore

  - o Recipient: Patriot Processing - 20402 N. 17th Ln., Phoenix, Arizona 85027

  - o Declared Contents: Supplement

- LT109370757SG

  - o Shipper: Globalmail Solution - P.O. Box 1233, Singapore

- o Recipient: Patriot Processing - 20402 N. 17th Ln., Phoenix, Arizona 85027
- o Declared Contents: Supplement

- LT10369657SG
  - o Shipper: Globalmail Solution - P.O. Box 1233, Singapore
  - o Recipient: JKL Enterprises - 20402 N. 17th Ln., Phoenix, Arizona 85027
  - o Declared Contents: Supplement

- LT108589078SG
  - o Shipper: Globalmail Solution - P.O. Box 1233, Singapore
  - o Recipient: Jen Kelley (JENNIFER LEGGE's maiden name) - 20402 N. 17th Ln., Phoenix, Arizona 85027
  - o Declared Contents: Supplement

51.     USPS records also revealed nine Singapore parcels were having tracking alerts sent to phone number (602)309-6748 which is a phone number used by ROBERT LEGGE. One of these parcels had an image available, and the parcel was shipped to the following:

- LT109530799SG
  - o Shipper: Tranship Solution - P.O. Box 1233, Singapore
  - o Recipient: Laura Legge – 4242 E. Cactus Road, #327, Phoenix, Arizona 85032
  - o Declared Contents: Supplement

52.     Case agents accessed the Arizona Department of Transportation files, and as of October 4, 2020, ROBERT LEGGE has reported his current address as 20402 N. 17th Ln., Phoenix, Arizona 85027.

53.     On October 7, 2020, case agents served Google with a preservation letter, requesting to preserve all records for the following email accounts:

- **Rlegge69@gmail.com**
- **Jenniferlegge86@gmail.com**
- **Patriotprocessing15@gmail.com**
- **Jklenterprises01@gmail.com**
- **Handsomerob0315@gmail.com**

54.     On October 13, 2020, German authorities arrested LUTZ DOMBDERA and his partner, FREDERICK BUECKER, in Germany. In conjunction with these arrests, the German authorities seized Bitcoins valued at approximately 605,000 Euros.

55.     On October 14, 2020, case agents executed a federal search warrant at the residence of ROBERT LEGGE and JENNIFER LEGGE, located at 20402 N. 17th Ln., Phoenix, Arizona 85027. ROBERT LEGGE and JENNIFER LEGGE were both present and provided voluntary statements to case agents.

56.     ROBERT LEGGE stated he has been purchasing pharmaceuticals from LUTZ DOMBDERA and his employees for several years. A couple years ago, LUTZ DOMBDERA asked ROBERT LEGGE if he would process payments for LUTZ DOMBDERA, and ROBERT LEGGE agreed to this.   ROBERT LEGGE would receive emails to his email account, **patriotprocessing15@gmail.com**, and these emails would contain the customer's information as well as the amount owed by the customer.  ROBERT LEGGE received payment from LUTZ DOMBDERA's customers, via Zelle and Google Pay.  ROBERT LEGGE said he has an excel spreadsheet containing all of the customer orders, saved in the Google Documents, under this **patriotprocessing15@gmail.com** Google account.  ROBERT LEGGE used this Google account,

23

**patriotprocessing15@gmail.com,** to communicate with LUTZ DOMBDERA and LUTZ DOMBDERA's employees, via email and Google Hangout chat. Case agents are aware conversations, via Google Hangouts, are often saved on Google servers.

57.       ROBERT LEGGE admitted to processing at least $1 million in drug payments for LUTZ DOMBDERA and another $2.4 million in drug payments for another overseas drug supplier. ROBERT LEGGE knew at least some of the sales for LUTZ DOMBDERA came from the online pharmacies www.tramadolshop.is and www.pillsbrothers.is. In addition to processing drug payments, ROBERT LEGGE said he has been receiving drug parcels shipped to his Phoenix residence from LUTZ DOMBDERA's company, and ROBERT LEGGE sells the majority of the pills locally in Phoenix, Arizona to 600 regular customers.

58.       Case agents seized approximately 10,000 erectile dysfunction tablets (non-controlled but prescription drug), approximately 450 tablets of tramadol (a schedule IV controlled substance), $10,320 U.S. currency, electronic devices, and 5.5 pounds of unwashed poppy seeds, which are believed to contain morphine and codeine. ROBERT LEGGE logged into several Bank of America and U.S. Bank accounts, in the presence of case agents. ROBERT LEGGE said he used these accounts to receive and transfer drug proceeds. ROBERT LEGGE voluntarily transferred approximately $6,351.09 of drug proceeds from two of the bank accounts to the custody of case agents for asset forfeiture purposes. ROBERT LEGGE said that in addition to using the email address, **patriotprocessing15@gmail.com** for the majority of the drug trafficking communication, the following email accounts were used for communication with the banks at times regarding bank accounts used to receive drug proceeds, via Zelle:

- **Rlegge69@gmail.com**
- **Jenniferlegge86@gmail.com**

- **Patriotprocessing15@gmail.com**

- **Jklenterprises01@gmail.com**

- **Handsomerob0315@gmail.com**

59.     Based on my training and experience and the provided facts, I believe ROBERT LEGGE is involved in a drug trafficking organization (DTO) that ships controlled pharmaceuticals from Singapore to the United States. ROBERT LEGGE receives drugs parcels shipped to his personal residence from shipping companies owned by LUTZ DOMBDERA. Based on my training and experience and the facts set forth above, I believe that information related to the email addresses:                **patriotprocessing15@gmail.com,**                **Rlegge69@gmail.com,** **Jenniferlegge86@gmail.com,**                **Jklenterprises01@gmail.com,**                **and** **Handsomerob0315@gmail.com** will include evidence about the DTO.

60.     I know from my training and experience that email records, to include the email content, will often times provide details that enable law enforcement to identify the user of the email and pinpoint his or her location.   In this case, the identification of the user of the email account will assist case agents in identifying the true identity and location of the person(s) having control over the email accounts, identification of co-conspirators, financial accounts, the identification of drug suppliers and shippers, identification of customers, and the details revolving around the payment processing of the drug purchases.

61.     I also know that persons involved with owning and/or operating internet pharmacies and providing the drugs for such internet pharmacies most often communicate by email.  These communications include but are not limited to drug orders, drug shipping information, and payments for said drugs. In this investigation specifically, I have had the opportunity to review email account records, to include email content, belonging to multiple members of this DTO,

25

which were obtained pursuant to federal search warrants. Based on the review of these records, from speaking to customers, by conducting undercover controlled buys, and speaking with cooperating co-conspirators, I know that email is the primary form of communication for this DTO. Most commonly, customers place their orders by email or by internet pharmacy website. Internet pharmacy representatives and payment processors communicate with the customers by email regarding payment and drug order. The internet pharmacy representative then emails the orders to the internet pharmacy employee responsible for forwarding the orders to the source of supply. After the source of supply ships the drugs to the customer(s), an email is commonly sent by the source of supply to the internet pharmacy representative documenting that the order was shipped and the tracking number. Upon request by the customer, the internet pharmacy representative will email the shipping tracking number to the customer. In addition, the internet pharmacy employees will also communicate, via email, with the source of supply about payment for the controlled substances.

62.     For all of the foregoing reasons, case agents are requesting a search warrant for emails containing the information set forth in Attachment A for the following: **patriotprocessing15@gmail.com, Rlegge69@gmail.com, Jenniferlegge86@gmail.com, Jklenterprises01@gmail.com,** and **Handsomerob0315@gmail.com** for the period of October 1, 2017 to the present. This October 1, 2017 beginning date is the date that the CS began working with ROBERT LEGGE to process drug payments, communicate with customers, and monitor drug parcels, which was accomplished using **patriotprocessing15@gmail.com, Rlegge69@gmail.com, Jenniferlegge86@gmail.com, Jklenterprises01@gmail.com,** and **Handsomerob0315@gmail.com.**

63.     In general, an e-mail that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google's servers for a certain period.

## BACKGROUND CONCERNING GOOGLE

64.     In my training and experience, I have learned that Google provides a variety of online services, including electronic mail ("email") access, to the public. Google allows subscribers to obtain a free email account at the domain name gmail.com like the Subject Account listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

65.     A Google subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

66.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such

27

information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

67.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

68.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user because

of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

69.     In addition to email, Google offers its users a number of other online services. A list of those services and their feature is available at the following URL: https://support.google.com/.

70.     One of the services Google offers is Google Drive. Google Drive is a file storage and file sharing application that allows its users to share access to the content of files by sending a URL to others. According to information available from Google, Google stores the content of those files on their servers. In my training and experience, information stored on Google Drive may constitute evidence of the crimes under investigation because the information may include records of illicit transactions, payment ledgers, and similar documents.

71.     In my training and experience, and publicly available information from Google, I know that Google uses cookies and similar technology to collect information about its users, including to identify a user's device and browser version. Google also states that it uses "technologies" to determine a user's actual location. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users and their locations.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

72.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 2713 by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications) described in Section I of Attachment B. Upon receipt

29

of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

73. Pursuant to 18 U.S.C. § 2713, this application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

## CONCLUSION

74. Based on the information described above, I request that the Court issue the proposed search warrant for the Subject Accounts. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

75. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

76. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## ATTACHMENT A
### Property to Be Searched

This warrant applies to information associated with the following email addresses and accounts and for the following periods, that are stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California:

1. **patriotprocessing15@gmail.com** (from October 1, 2017 to present)

2. **Rlegge69@gmail.com** (from October 1, 2017 to present)

3. **Jenniferlegge86@gmail.com** (from October 1, 2017 to present)

4. **Jklenterprises01@gmail.com** (from October 1, 2017 to present)

5. **Handsomerob0315@gmail.com** (from October 1, 2017 to present)

## <u>ATTACHMENT B</u>
### Particular Things to be Disclosed and Seized

I.      **Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each of the accounts or identifiers listed in Attachment A:

a.      All customer information (e.g. name, age, email address, physical address, payment information, telephone numbers) associated with the account;

b.      All records and information regarding the creation of the account and access to the account, including records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, and log-in IP addresses associated with session times and dates.

c.      The types of services utilized;

d.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

e.      The contents of all Google Hangout, or other Google chats, associated with the account, including stored or preserved copies of chat conversations sent to and from the account, the source and destination user associated with each conversation, and the date and time at which each message was sent;

32

f.      All records, files, and other information stored/saved in the accounts, including information, files, and data saved to Google Drive;

g.      A complete file activity log for any associated Google Drive account;

h.      All records and information and analytics collected by the Provider through the use of cookies or similar technology including the type of browser and device used by the account holder to access the account, the web page visited before coming to Google sites, and other identifiers associated with the devices used by the account holder;

i.      All records and information that identifies a user's actual location;

j.      All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken;

k.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of the warrant.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities related to violations of Title 21, United States Code, Sections 846 and 841(a)(1) (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet), since October of 2017, including but not limited to, information pertaining to the following matters:

a.      The sale and distribution of controlled substances;

33

b.      The exchange or laundering of funds related to the sale and distribution of controlled substances;

c.      Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

d.      Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

e.      The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s)

f.      Other accounts used by the persons using the account;

g.      The devices used to access the account;

h.      The identity of the person(s) who communicated with the account about matters relating to the sale and distribution of controlled substances, including records that help reveal their whereabouts;

i.      The identity of persons sharing Google Drive account URLs associated with the account and related to the sale and distribution of controlled substances;

j.      The identity of persons saving, storing, editing, and accessing files and records on Google Drive accounts associated with the account and related to the sale and distribution of controlled substances;

k.      Financial information, credit card numbers, social security numbers, and other personal identifiable information stored on/in Google Drive account; and

l.      Communications and files that contain IP addresses and username and passwords to those IP addresses.

34